# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| NUBYL A. ALLEYNE, | * |
| Plaintiff, | * |
| vs. | * CIVIL ACTION NO. 17-cv-00453-B |
| NANCY BERRYHILL,<br>Acting Commissioner of Social Security, | * |
| Defendant. | * |

## ORDER

Plaintiff Nubyl A. Alleyne (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 19, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**[1]

Plaintiff filed her applications for benefits on February 24, 2015, alleging disability beginning November 20, 2014, based on spinal disease in lower back, nerve damage in left leg, and high blood pressure. (Doc. 12 at 200, 222, 226). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge L. Dawn Pischek (hereinafter "ALJ") on February 10, 2016. (Id. at 65). Plaintiff attended the hearing with her attorney and provided testimony related to her claims. (Id. at 68). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 77). On August 19, 2016, the ALJ conducted a supplemental hearing. (Id. at 49). Plaintiff again attended the hearing with her attorney and provided testimony related to her claims. (Id. at 52). A vocational expert ("VE") also appeared at the supplemental hearing and provided testimony. (Id. at 60-61). On December 16, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 25). The Appeals Council denied Plaintiff's request for review on August 30, 2017. (Id. at 5). Therefore, the ALJ's decision dated December 16, 2016, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

filed the present civil action. (Doc. 1). Oral argument was conducted on November 8, 2018. (Doc. 23). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II. Issue on Appeal**

> **Whether substantial evidence supports the Residual Functional Capacity ("RFC") for a range of sedentary work with the stated restrictions?**

**III. Factual Background**

Plaintiff was born on December 2, 1975, and was forty years of age at the time of her administrative hearing on February 10, 2016. (Doc. 12 at 65, 222). Plaintiff graduated from high school and completed two years of college. (Id. at 69). Plaintiff last worked from 1998 to 2010 as a Certified Nursing Assistant for a hospital and home health service. (Id. at 69, 227, 241).

Plaintiff testified that she can no longer work because of back and left leg pain and that she is unable to bend or lift. (Id. at 69-71). Plaintiff testified that, at times, she needs a walker to make sure that she does not trip. (Id. at 70-74). She also takes pain medication but continues to have pain and side effects, such as headaches and disorientation. (Id. at 55, 57, 72).

**IV. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial

3

evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

### V. Statutory and Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI. Discussion**

    **A. Substantial evidence supports the Residual Functional Capacity ("RFC") for a range of sedentary work with the stated restrictions.**

In her brief, Plaintiff argues that the ALJ's finding that she can perform a range of sedentary work is not supported by substantial evidence given her lumbar disc disease and left leg pain and numbness. The Government counters that the ALJ expressly considered these impairments and that the RFC is fully supported by the substantial evidence. (Doc. 16 at 7-9). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what Plaintiff

can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause

7

exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the

8

doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In support of her argument that the RFC for a range of sedentary work is not supported by substantial evidence, Plaintiff argues that she was treated for lumbar disc disease and related back and leg pain from 2014 to 2016; she had a failed back surgery on May 26, 2015, to correct a herniated disc at L4-5;[3] she had one post-surgery injection, pain medication, and physical therapy; a post-surgery MRI of her lumbar spine in 2016 showed a small annular bulge at L4-5 with moderate encroachment, a small annular bulge at L3-4 with borderline encroachment, and a small herniation at L5-S1 with borderline encroachment; and she now requires a walker to ambulate because of her left leg pain and numbness. (Doc. 13 at 3-6). Plaintiff also points to the findings of consultative

---

[3] The ALJ found that the surgery may have "failed" in that it did not alleviate all of Plaintiff's subjective complaints. However, as discussed herein, the ALJ found that Plaintiff's subjective complaints were inconsistent with the overall objective medical evidence in the record. (Doc. 12 at 38).

9

physician, Dr. Aaron Mates, M.D., on May 21, 2016, that she had difficulty getting out of a chair and onto the examination table, that she ambulated with difficulty and used an assistive device, that she had a positive straight leg raise, that she was not able to walk on her toes or heels, and that she had difficulty squatting and bending over to touch her toes. (Id. at 6). Plaintiff further relies on Dr. Mates' opinion set forth in a Medical Source Statement (MSS) that she cannot ambulate without a wheelchair, walker, two canes, or two crutches. (Id.; Doc. 12 at 401). Last, Plaintiff points to her treatment notes in June 2016 showing continued complaints of left leg weakness and numbness and a finding that she has scar tissue in the left lateral recess adjacent to the left L5 nerve root. (Id.). Plaintiff argues that, given this evidence, the ALJ's RFC is not supported by substantial evidence.

In the ALJ's decision, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease status post L4-5 laminectomy, decompression, and left discectomy. (Doc. 12 at 27). The ALJ determined that Plaintiff has the RFC to perform a range of sedentary work with the following restrictions: Plaintiff cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs; she can occasionally stoop, kneel, crouch, and crawl; and she cannot tolerate exposure to unprotected heights or hazardous machinery. (Id. at 33).

Based upon the testimony of the vocational expert, the ALJ

concluded that Plaintiff is not able to perform her past relevant work, but she can perform other work such as bench assembler, surveillance system monitor, and wood products inspector (all sedentary and unskilled). (Id. at 42). Thus, the ALJ found that Plaintiff is not disabled. Having reviewed the evidence at length, the Court is satisfied that the ALJ's RFC is supported by substantial evidence.

In her decision, the ALJ discussed, at length, Plaintiff's treatment records from 2014 to 2016. The records reflect that Plaintiff began treatment in 2014 for back and leg pain, which she generally described as moderate and "waxing and waning" in nature.[4] (Id. at 27-28, 344, 348, 361, 364, 368, 379, 384). In addition, the ALJ discussed at length the treatment that Plaintiff received from orthopedist, Dr. Tim Revels, M.D., who diagnosed Plaintiff in December 2014 with lumbar degenerative disc disease at L4-5 and L3-4 and lumbar radiculopathy. (Id. at 344, 346). Dr. Revels'

---

[4] The record shows that, with a few exceptions, Plaintiff generally described her pain as "off and on" and rated at an average of 3-6/10 or 2/10 on the pain scale. (Id. at 330, 344, 348, 361, 364, 371, 379). Plaintiff further reported that her medications helped, without significant side effects. (Id. at 364, 371, 384). In fact, Dr. Hall and Dr. Revels documented that Plaintiff was not taking her pain medication. (Id. at 361, 408). In addition, Plaintiff's activities of daily living included caring for her children and her household, caring for her own personal needs, cooking, performing light housekeeping, and walking every day to pick her child up from school. (Id. at 40, 249-54). The ALJ found all of this evidence to be inconsistent with Plaintiff's claims of debilitating and disabling back and leg pain. (Id. at 38, 40).

11

examination findings included limited range of motion in the lumbar spine, with no swelling or weakness; normal muscle tone, strength and bulk; normal left lower extremity, with full range of motion; no weakness in lower extremities; normal reflexes in lower extremities; smooth gait; and able to stand without difficulty. (Id. at 28, 345-46). An MRI of Plaintiff's lumbar spine taken at that time revealed degenerative disc disease at L3-4 and L4-5 with foraminal stenosis and a herniated disc at L4-5. (Id. at 28, 344, 348). Dr. Revels recommended epidurals and medications for pain relief and mentioned the possibility of surgery.[5] (Id.).

The ALJ also noted that Plaintiff's pain management physician, Dr. Charles Hall, M.D., administrated an epidural injection in January 2015. (Id. at 347). Plaintiff reported on follow up to Dr. Revels in February 2015 that she had received "about 65% relief" from the epidural, and she rated her pain as 3-6/10 on the pain scale. (Id. at 29, 348). Dr. Revels diagnosed Plaintiff with lumbar spinal stenosis, lumbar radiculopathy, lumbar pain, and lumbar herniated disc and recommended surgery, specifically an "L4-5 hemi-laminectomy decomp/discectomy." Plaintiff opted to wait until the end of the school year to proceed. (Id. at 29, 350).

On May 12, 2015, Dr. Revels performed a left L4-5

---

[5] Dr. Revels noted on December 19, 2014, that the "[patient] wants to go on disability because she is unable to work, but she also has 3 small kids at home." (Doc. 12 at 344).

12

hemilaminectomy and decompression discectomy. (Id. at 29, 357). Initially, Plaintiff reported improvement in symptoms, but in July and November 2015, she reported left leg pain with worsening symptoms. (Id. at 29, 368, 371, 374, 384). Dr. Revels examined Plaintiff on November 6, 2015, and his findings were normal left and right lower extremities, with no swelling, no instability, no weakness, full range of motion, and normal reflexes.[6] (Id. at 29, 368-70). Dr. Revels noted improvement in Plaintiff's preoperative symptoms (pain) and administered a Toradol/steroid IM injection and referred Plaintiff to pain management to address her left leg pain. (Id. at 29, 370).

On December 8, 2015, Plaintiff returned to Dr. Hall and reported that her back surgery had "helped [her] back" but that she continued to have left leg pain, although the pain "improved with meds, rest." (Id. at 29, 364). Plaintiff also reported that physical therapy had helped with her strength but not much with pain relief. (Id. at 364). Plaintiff reported her pain as 5/10, and her physical examination findings revealed 4/5 strength in her left hip, normal gait, normal muscle tone and bulk in lower extremities, and she was able to stand without difficulty. (Id. at 29, 366). Dr. Hall recommended an injection. (Id.). In January

---

[6] Dr. Revels noted on November 6, 2015, that Plaintiff's pain was "improving," and she denied weakness in her legs or changes in sensation. (Doc. 12 at 368).

13

2016, Dr. Hall again observed that Plaintiff had a normal gait and was able to stand without difficulty. (Id. at 371, 373).

In March 2016, Plaintiff obtained another MRI of her lumbar spine which revealed scar tissue adjacent to the L5 left nerve root with a small annular bulge at L4-5 with moderate encroachment, a slight herniation without migration at L5-S1, and a small annular bulge with borderline encroachment at L3-4. (Id. at 29, 384, 388). On March 23, 2016, Plaintiff returned to Dr. Hall and reported that she had to use a walker to ambulate because of weakness in her left leg. (Id. at 29, 384). Plaintiff also reported persistent debilitating lower back and left leg pain and that the left leg pain was worse than the lumbar pain. (Id. at 384). According to Plaintiff, the pain improved with "meds, rest". (Id.) Dr. Hall conducted a physical examination, and his findings included moderate reduced range of motion and moderate pain during testing of the lumbosacral spine; positive straight leg raise on left; generalized weakness to the left leg; normal muscle tone and bulk; and unsteady gait (noting that Plaintiff presented with a walker).[7] (Id. at 29, 384, 386).

On May 21, 2016, Plaintiff underwent a consultative orthopedic examination by Dr. Aaron Mates, M.D. Dr. Mates noted that Plaintiff

---

[7] Notably, it was not until Plaintiff appeared at Dr. Hall's office with an unprescribed walker in February and March 2016 that Dr. Hall noted that her gait was unsteady. (Doc. 12 at 390, 392).

14

ambulated with difficulty and was using a walker. He opined that while the walker appeared to be helpful, it was not medically necessary. (Id. at 30, 397, 399). Dr. Mates' physical examination findings included spasm of the paraspinous muscle; positive straight leg raise on left; unable to walk on toes and heels; difficulty squatting; difficulty bending over and touching toes; difficulty getting out of chair and on exam table; weakness in left leg and abnormal sensation; no muscular atrophy; and normal reflexes. (Id. at 30, 395-99). Dr. Mates opined that, although Plaintiff had some limitations in her ability to bend or stoop and with standing and walking, she was able to stand and walk occasionally, *i.e.*, "up to 1/3 total of an 8-hour workday." (Id. at 399). Dr. Mates repeated that, while an assistive device might be helpful, it was not medically required. (Id.).

On the same date, Dr. Mates completed a Medical Source Statement (MSS) opining that Plaintiff could sit for a total of six hours in an eight-hour workday, that she could walk for a total of one hour in an eight-hour workday, and that she could stand for a total of one hour in an eight-hour workday. (Id. at 30, 400-05). Dr. Mates also opined that Plaintiff could shop, travel without a companion, use standard public transportation, climb a few steps at a reasonable pace, cook, and care for herself. (Id. at 30, 400-05). Dr. Mates concluded that Plaintiff could perform sedentary work, stating that she Plaintiff was "very bright" and "capable for

a sitting job," but "no walking/standing/lifting."[8]  (Id. at 30, 400-05).  Remarkably, Dr. Mates also opined that Plaintiff could not ambulate without a wheelchair, a walker, two canes, or two crutches.  (Id. at 30, 400-05).

The ALJ assigned Dr. Mates' opinions partial weight because some of his opinions were inconsistent with other opinions expressed in his report and MSS, his own physical examination findings, and with the substantial medical evidence in the case.  (Id. at 36). Notably, the ALJ rejected Dr. Mates' opinion (in the MSS) that Plaintiff must use a walker, a wheelchair, two crutches, or two canes to ambulate as that opinion was internally inconsistent with the repeated opinions in his report that a walker was *not* medically necessary for Plaintiff to ambulate and that Plaintiff could stand and walk for one hour each in an eight-hour workday.  (Id.).  Based on the foregoing, the ALJ had good cause to discredit the foregoing opinions of Dr. Mates that were inconsistent with the objective medical evidence in the case.

Plaintiff's final treatment records show that, on August 3, 2016, she underwent electrodiagnostic testing of her bilateral lower extremities, and the testing showed no evidence of focal or

---

[8] As the ALJ pointed out, Dr. Mates' opinion that Plaintiff could do sedentary work with "no walking/standing/lifting" is internally inconsistent with his opinion that she could stand for a total of one hour in an eight-hour workday, walk for a total of one hour in an eight-hour workday, and lift up to twenty pounds frequently. (Doc. 12 at 30, 36, 395-405).

16

generalized peripheral neuropathy and no evidence of radiculopathy. (Doc. 12 at 31, 34, 411). The ALJ found this evidence, as well as the physical examination findings of Dr. Revels and Dr. Hall, to be consistent with an ability to perform work activities at the sedentary exertional level, particularly given the accommodations of no climbing of ladders, ropes, or scaffolds, only occasional stooping, kneeling, crouching, crawling, and climbing ramps or stairs, and no exposure to unprotected heights and hazardous machinery. (Id. at 34-35).

While there is no question that Plaintiff's medical history includes degenerative disc disease (resulting in L4-5 laminectomy surgery in May 2015), that her last MRI reflected scar tissue adjacent to the L5 left nerve root with a small annular bulge at L4-5 with moderate encroachment, a slight herniation without migration at L5-S1, and a small annular bulge with borderline encroachment at L3-4 (id. at 29, 384, 388), and that she experiences periodic symptoms of back and leg pain and numbness, Plaintiff's treatment records following her back surgery in 2015, on the whole, reflect routine, conservative treatment of her symptoms with medication, one injection, and physical therapy, resulting in largely unremarkable examination findings. Further, as noted, the August 3, 2016, electrodiagnostic testing of Plaintiff's bilateral lower extremities showed no evidence of focal or generalized peripheral neuropathy and no evidence of radiculopathy. (Id. at

17

31, 34, 411). Based on the foregoing, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform a range of sedentary work, with the stated restrictions. As stated, Plaintiff has failed to show that any limitations caused by her impairments either exceed the RFC or are not accommodated by the RFC and its stated restrictions. Accordingly, Plaintiff's claim must fail.[9]

**VII. Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

---

[9] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").

18

**DONE** this **27th** day of **March, 2019.**

                                                 **/s/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**